HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LEONARD PELTIER and CHAUNCEY PELTIER, <br><br> Plaintiffs, <br> v. <br> JOEL SACKS, et al. <br><br> Defendants. | CASE NO. C17-5209-RBL <br><br> ORDER GRANTING MOTION TO DISMISS <br><br> DKT. #15 |

THIS MATTER is before the Court on Defendants Edward Woods' and Larry Langberg's Motion to Dismiss Plaintiff Leonard Peltier's Complaint [Dkt. #15]. Peltier is a Native American convicted of murdering two FBI agents. He is also a talented artist. The Washington State Department of Labor & Industries displayed his work during the State's American Indian Heritage Month Celebration. Edward Woods and Larry Langberg, two former FBI agents, each wrote a letter to Joel Sacks, Director of L&I, asking L&I to remove Peltier's artwork because of his criminal history. Woods also wrote to Governor Jay Inslee:

Although not a constituent, I write to you with a very serious question:

> Is it morally acceptable, or even legal, for your office and Washington State to promote and endorse a cold-blooded murderer?

This, of course, relates to the display and promotion for sale of Leonard Peltier's prison artwork by the Washington State Department of Labor and Industries in Tumwater, Washington.[i]

Whether Peltier is an artist is arguable, and irrelevant.

Nonetheless, Peltier is a convicted felon for the brutal execution-style murder of two already wounded FBI Agents. (Attacked and mortally wounded by Peltier and other AIM thugs.) Peltier, as well, has clearly demonstrated he remains wholly unrepentant for his heinous crimes.

Any celebration of Peltier is the result of decades-long misinformation and promotion of ongoing myth and folklore.[ii] Native America has long abandoned Peltier's claims of any rights to represent their collective heritage and interests.

Peltier's conviction, through over a dozen appeals, has been upheld as he has had more critical reviews of the facts than most inmates. Any reasonable review of the legal history would be clearly evident as all the challenges to his conviction have been repeatedly debunked. Please have someone in your office review that history.[iii]

There has been a long and sordid legacy of Peltier's abuse of his native heritage but when it comes to proving his own guilt, and that he remains a remorseless murderer, we need only turn to Peltier himself for proof.

> How can the Governor of any state allow the promotion of a convicted felon who has said:
>
> "I seen Joe when he pulled it out of the trunk and he gave me a smile." (Relating to June 26, 1975 while two dead and mutilated FBI agents lay at their feet.)[iv] After thirty-five years in a public statement "And really if necessary I'd do it all over again because it was the right thing to do." (2010) And, thirty-nine years after the murders, "I don't regret any of this for a minute." (2014)
>
> Understanding Peltier's conviction, the events that took place at Pine Ridge and statements like these, it is unconscionable that your state would recognize Peltier for anything, let alone advertising to the public the sale of his paintings.
>
> And, as an aside, there has been a long-standing challenge for Peltier to prove where any of that money has gone, along with his abject failure to document any of his alleged "tax deductible" charitable activities.[v] That part of his history has been an ongoing scam, and sadly the State of Washington appears to have also bought into it.
>
> With all due respect I would urge you to thoroughly review the Peltier matter and remove his artwork from the Tumwater display.
>
> I remain. "In the Spirit of Coler and Williams"

Dkt. #15 at 14. Langberg wrote a similar letter to Sacks:

> Leonard Peltier murdered two FBI Agents, Ronald Williams and Jack Coler, on June 26, 1975 at the Pine Ridge Indian Reservation, in South Dakota. He was convicted of murder in Federal Court in 1977 and given two life sentences. Several appeals by Peltier to overturn his conviction have been rejected by federal courts.
>
> Officials at the Washington State Department of Labor and Industries should know Leonard Peltier is a vicious, violent and cowardly criminal who hides behind legitimate Native American issues. Leonard Peltier was never a leader in the Native American Community. Peltier is simply a vicious thug and murderer with no respect or regard for human life, especially when law enforcement officers are involved.
>
> Director Sacks: I would ask that you immediately remove Leonard Peltier's artwork from state property. In view of Mr. Peltier's background, it's inappropriate to me, as a former law enforcement officer, that your department would put up such a display.

Dkt. #15 at 12. In response to public outcry, L&I took down Peltier's work approximately two weeks earlier than it had planned. *See* Dkt. #15 at 17, 18.

Peltier sued Woods, Langberg, and others. He claims Woods and Langberg defamed him by dishonestly assassinating his character to L&I, which caused him emotional harm and led to the removal of his artwork. Woods and Langberg moved for dismissal, alleging they have immunity under Washington's anti-SLAPP[1] statute, RCW 4.24.510, for petitioning the State. Peltier argues the statute does not immunize them because by defaming him, they did not exercise protected speech.[2] Woods and Langberg argue the statute does not preface immunity on good faith, only on the requirement that the speaker communicated a matter of reasonable concern to a government agency.

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief plausible on its face. *See Aschcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and

---

[1] SLAPP is an abbreviation for "Strategic Lawsuit Against Public Participation."

[2] The documents Peltier attaches to his Response [Dkt. #20] are STRICKEN because they fall outside what a court may examine when deciding a motion to dismiss. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the Court may deny leave to amend. *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

Washington's anti-SLAPP statute aims to deter meritless suits filed to chill a defendant's exercise of his First Amendment rights. It immunizes any "person who communicates a complaint or information to any branch or agency of federal, state, or local government … from civil liability for claims based upon the communication … [if it regarded] any matter reasonably of concern to that agency or organization." RCW 4.24.510 (2002). "The communicator need not have acted in good faith in order to be entitled to immunity." *Engler v. City of Bothell*, No. C15-1873JLR, 2016 WL 3453664, at *7 (W.D. Wash. June 20, 2016) (explaining that the 2002 amendment removed the statute's good faith requirement, broadening the absolute protection afforded to communicators) (citing *Bailey v. State*, 191 P.3d 1285, 1291 (Wash. Ct. App. 2008)). Even if his speech was defamatory, he is immune if his communication regarded "any matter reasonably of concern" to the governmental agency to which he reported. *See, e.g., Lowe v. Rowe*, 173 Wash. App. 253, 262, 294 P.3d 6, 11 (2012) (dismissing defamation claim because anti-SLAPP immunity applied). Speech is 'of public concern' when it can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207 (2011).

The letters Woods and Langberg wrote to Saks and Inslee regarded a matter of public concern to the State and to the L&I department specifically. Each communicated his displeasure with L&I's public display of Peltier's artwork, as it seemed to condone his murderous past. How the public receives a state-sanctioned public display is a matter reasonably of concern to the State and to its agency housing the display. In fact, the public's reaction concerned the State and L&I so much that L&I removed Peltier's work for overshadowing the State's American Indian Heritage Month Celebration.

Peltier's defamation, emotional distress, and negligence claims against Woods and Langberg arise from their letters. Their petitioning L&I (and Inslee) forms the gravamen of Peltier's claims against them. It is the root and the substance of his claims against them. He could not possibly amend his complaint to skirt this fact. Under the anti-SLAPP statute, Woods and Langberg are immune from suit for these communications, which regarded L&I's public display of Peltier's paintings. Peltier's claims against Woods and Langberg are therefore DISMISSED with prejudice under RCW 4.24.510.

Woods and Langberg request reimbursement for their expenses and attorneys' fees and statutory damages of $10,000. Under the anti-SLAPP statute, a person prevailing upon the defense of immunity "is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars." RCW 4.24.510. "Statutory damages may be denied if the [C]ourt finds that the complaint or information was communicated in bad faith." *Id.*

Peltier argues Woods and Langberg petitioned Sacks (and Inslee) in bad faith because they described him as "a remorseless murderer," a "vicious thug," and disowned by other Native Americans, even though their long history of opposing his appeals has shown them these

statements are untrue. Woods and Langberg do not take up the merits of Peltier's malice argument, but state it was not bad faith for them to remind the State he was twice convicted of murder. Perhaps not, but the Court cannot decide their motivation at the motion-to-dismiss stage. It certainly cannot decide as a matter of law that Woods' and Langberg's descriptions of Peltier's character—as contrasted with the fact that he was convicted of murder—were communicated in good faith. Their motivation remains an issue of fact inappropriate for resolution at this time. The Court therefore AWARDS Woods and Langberg their expenses and fees under RCW 4.24.510, but DENIES their request for statutory damages.[3]

Accordingly, Woods' and Langberg's Motion to Dismiss [Dkt. #15] is GRANTED, and Peltier's claims against them are DISMISSED with prejudice. They may file a motion describing the amount of expenses and fees they seek within 14 days. Their request for statutory damages is DENIED.

IT IS SO ORDERED.

Dated this 25 day of July, 2017.

Ronald B. Leighton
United States District Judge

---

[3] The undisputed facts of this case persuade the Court further from awarding additional damages. It is ironic that Woods and Langberg seek a statutory award protecting their free speech against Peltier, who is also attempting to exercise his right to free expression. The display of artwork, and the free-flowing discourse and debate surrounding it, enriches our culture and elevates our society. Although short-lived, L&I's display of a convicted felon's paintings achieved just that. Peltier should not be sanctioned for wanting his artwork shown publically, just as Woods and Langberg should not be sued for petitioning the government to have it removed.