1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEONARD PELTIER; and CHAUNCEY
PELTIER,

                              Plaintiffs,

        v.

JOEL SACKS, individually and in his capacity
as DIRECTOR OF the WASHINGTON
STATE DEPARTMENT OF LABOR AND
INDUSTRIES, *et al.*,

                              Defendants.

CASE NO. C17-5209-JCC

ORDER

        This matter comes before the Court on the motion for summary judgment (Dkt. No. 73)
filed by Defendant Joel Sacks, the Director of the Washington State Department of Labor and
Industries' ("L&I"). Having thoroughly considered the parties' briefing and the relevant record,
the Court hereby GRANTS the motion for the reasons explained herein.

## I.      BACKGROUND

        The Court has described the facts of this case in previous orders and will summarize only
those relevant to the instant motion. Plaintiff Leonard Peltier was convicted of murdering two
FBI agents in the 1970s and is serving a life sentence in prison. (Dkt. No. 1 at 2.) Mr. Peltier is
an artist, and while in prison, he has received acclaim for his paintings of Native American
themes. (*Id.* at 6–7.)

In November 2015, L&I held a month-long Native American Heritage month celebration in its Tumwater building. (*Id.* at 8; Dkt. No. 74-2.) Chauncey Peltier,[1] the chair of the International Leonard Peltier Defense Committee ("ILPDC"), agreed to loan four paintings by Mr. Peltier to L&I to be displayed as part of the event. (Dkt. No. 1 at 8.) The paintings were exhibited in the L&I building's rotunda, but when L&I received complaints from retired FBI agents and others, L&I removed the paintings two weeks before the exhibit was over. (*Id.* at 9–10.) In 2017, Mr. Peltier filed suit against various state actors and the complaining FBI agents, alleging, among other things, that Director Sacks violated his First Amendment rights when he decided to prematurely remove the paintings from the exhibit in response to public pressure. (*Id.* at 11–13.) In 2018, Director Sacks and two other government officials moved for summary judgment, arguing that the exhibit was government speech. (Dkt. No. 42.) The Court disagreed and denied summary judgment on Mr. Peltier's First Amendment claim against Director Sacks. (Dkt. No. 54 at 5–7.)

In discovery responses provided after the Court's order denying summary judgment, Mr. Peltier indicated that he did not own the paintings at issue at the time they were displayed by L&I. (*See* Dkt. No. 74-1 at 12.) Rather, Mr. Peltier had given the paintings, as he does all his paintings, to the ILPDC, an organization dedicated to freeing Mr. Peltier and others it believes are wrongfully incarcerated political prisoners. (*Id.* at 5, 11.) All discussions about the approval and selection of paintings for the L&I display took place "between the ILPDC and Chauncey Peltier as Board President." (*Id.* at 9.)

Specifically, in response to a request that Mr. Peltier "produce a copy of the shipping instructions and insurance documentation for the transfer of each painting from Leonard Peltier to Chauncey Peltier," Mr. Peltier stated "I do not and did not own the paintings[.] I have no such

---

[1] Chauncey Peltier is Leonard Peltier's son. Any references to "Mr. Peltier" in this order are to Leonard Peltier. Where the Court intends to refer to Chauncey Peltier, the Court uses his full name.

documentation." (*Id.* at 11–12.) In response to an interrogatory seeking the address and dates of each location where any of the four paintings had been on display, Mr. Peltier responded that "all of my artwork, except for paintings I have gifted to particular individuals, are owned and administered by the [ILPDC] to raise awareness of my case." (*Id.* at 4–5.) In response to Defendant's request for "a copy of all correspondence regarding the transfer of possession of each of the four paintings described in the Complaint from Leonard Peltier to Chauncey Peltier," Mr. Peltier responded: "There is no such correspondence. All of the paintings are owned the ILPDC and used to express my views and bring attention to my case. They were transferred/gifted when mailed out of the prison to ILPDC or to individuals who then donated them back to the ILPDC." (*Id.* at 11.) According to Mr. Peltier's discovery responses, if the ILPDC sells one of his paintings, "to the best of my knowledge all proceeds received . . . [are] used to help Indian People in need." (*Id.* at 13.)

Director Sacks now moves for summary judgment, arguing that because Mr. Peltier transferred ownership of the paintings to the ILPDC, he lacked a First Amendment interest in their display. (*See generally* Dkt. No. 73.)

## II.   DISCUSSION

### A.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he moving party bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

1    317, 323 (1986). In response, the nonmoving party must "go beyond the pleadings and by [its]

2    own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate'

3    specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations

4    omitted).

5            **B.**    **Analysis**

6          In moving for summary judgment, Director Sacks relies on Mr. Peltier's discovery

7    responses indicating he did not own the paintings at issue at the time of their display by L&I.

8    (Dkt. No. 73 at 4–9.) Director Sacks argues that Mr. Peltier cannot prevail on his First

9    Amendment claim because an artist who sells or gives a work of art to a third party relinquishes

10    his First Amendment interests in the display of that art. (*Id.*)

11          Director Sacks relies on two cases holding that an artist who transfers ownership of his

12    art to a third party relinquishes any First Amendment interest in the display of that art. (*Id.* at 5–

13    6 (citing *Serra v. U.S. General Services Admin.*, 847 F.2d 1045 (2d Cir. 1988); *Burke v. City of*

14    *Charleston*, 139 F.3d 401 (4th Cir. 1998)).) First, the Second Circuit has held that an artist who

15    created a sculpture for the plaza of a federal building relinquished his personal First Amendment

16    interest when he sold the sculpture to the Government, and so he could not sue the Government

17    for moving the sculpture in response to community complaints. *Serra*, 847 F.2d at 1049.

18    Similarly, the Fourth Circuit held that an artist who painted a mural on the side of a restaurant

19    could not sue the city for a violation of his First Amendment rights when the city denied the

20    restaurant owner a permit to display the mural. *Burke*, 139 F.3d at 403. The Court held that the

21    painter relinquished his First Amendment interest when he effectively sold the mural to the

22    restaurant owner, who alone had the right to display it. *Id*.

23          Neither Director Sacks nor Mr. Peltier cite to any Ninth Circuit authority squarely

24    addressing this issue, and the Court has not located any. But the Court agrees with the holdings

25    of the Second and Fourth Circuits in *Serra* and *Burke*. Mr. Peltier does not dispute that he

26    transferred ownership of the paintings to the ILPDC but argues that *Serra* and *Burke* do not

1  apply because the mission of the ILPDC is to advocate on Mr. Peltier's behalf and serve as "'the

2  hub of communication between Leonard Peltier and . . . the general public.'" (Dkt. No. 79 at 18

3  (quoting Dkt. No. 81-1 at 1).) Although Mr. Peltier submits a declaration in which he states that

4  the ILPDC "manage[s] [the art work] in my interest" and "[i]t was never my intention to

5  relinquish any control over my artistic expression," (Dkt. No. 80 at 7), he puts forth no evidence

6  demonstrating that he retained any legal right to control the display of (or anything else related

7  to) the paintings at issue here once he gave them to the ILPDC. *Cf. Shaffer v. Def. Intel. Agency*,

8  901 F. Supp. 2d 113, 116–17 (D.D.C. 2012) (finding that because the plaintiff had not "[sold] all

9  of his interest in his book by way of his publishing contract with St. Martin's," but rather,

10  retained many publishing rights, he "ha[d] standing to bring [a First Amendment] suit based

11  upon these retained rights"). Nor does Mr. Peltier put forth any evidence that the ILPDC is his

12  agent or alter ego for any legal purposes. Accordingly, the rule from *Serra* and *Burke* applies.

13  Because Mr. Peltier transferred ownership of the paintings to a third party, he does not have

14  standing to challenge government decisions impacting their display, and his First Amendment

15  claim must be dismissed.

16  **III.  CONCLUSION**

17         For the foregoing reasons, the Court GRANTS Defendant Joel Sacks' motion for

18  summary judgment (Dkt. No. 73).

19         DATED this 19th day of August 2021.

20

21

22

23  John C. Coughenour
    UNITED STATES DISTRICT JUDGE

24

25

26